# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

\* \* \*

|   |   |
|---|---|
| T.R.P. COMPANY, INC., | Case No. 2:17-cv-02197-JCM-CWH |
| Plaintiff, | **ORDER** |
| v. |   |
| SIMILASAN AG, et al., |   |
| Defendants. |   |

Presently before the court is plaintiff T.R.P. Company, Inc.'s motion for order issuing a letter (ECF No. 72), filed on August 29, 2018. Defendant Similasan AG filed a response (ECF No. 73) on September 12, 2018. Plaintiff filed a reply (ECF No. 74) on September 18, 2018.

This case arises from allegations of trademark infringement. (Compl. (ECF No. 1).) Plaintiff alleges that it is the owner of a trademark for a homeopathic eye drop product known as PinkEyeRelief. (*Id.*) Plaintiff claims that defendant Similasan AG is a Swiss corporation that manufactures homeopathic remedies in Switzerland and sells the products in the United States through defendant Similasan Corporation. (*Id.*) Plaintiff further alleges that defendant Similasan AG used the name "Pink Eye Relief" for an eye drop product and then filed a United States trademark application for the product. (*Id.*) Plaintiff further alleges that the trademark application was denied due to the product's similarities to plaintiff's product. (*Id.*)

Defendants then moved to dismiss the complaint, and moved for a protective order or limited stay of discovery pending the court's resolution of the motions to dismiss. (*See* Mot. to Dismiss (ECF Nos. 56, 57); Mot. for Protective Order (ECF No. 54).) On November 27, 2018, the court denied defendants' motion to dismiss. (Order (ECF No. 76).) The court then denied defendants' motion to stay discovery as moot. (Min. Order (ECF No. 94).)

Plaintiff now moves for an order issuing a letter of request under the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters to obtain physical evidence from defendant Similasan AG. Defendant Similasan responds that the court should deny

1  plaintiff's request because discovery is not warranted, given the pending motion to dismiss and

2  the motion to stay discovery. (Resp. (ECF No. 73).) Plaintiff replies that its motion is

3  procedurally proper and that plaintiff is entitled to discovery. (Reply (ECF No. 74).)

4      The March 18, 1970 Hague Convention on the Taking of Evidence Abroad in Civil and

5  Criminal Matters ("Hague Convention") is the "law of the United States" with the same effect and

6  force of a federal statute. Hague Convention on the Taking of Evidence Abroad in Civil or

7  Commercial Matters, art. 1, March 18, 1970, 3 U.S.T. 2555 (Oct. 7, 1972); *see also*

8  *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for Southern Dist. of Iowa*, 482

9  U.S. 522, 524 n.1 (1987). Signatories to the Hague Convention agree that a judicial authority in a

10 contracting state may provide a letter of request to obtain evidence.[1] Hague Convention, art. 1, 3

11 U.S.T. 2555. Both the United States and Switzerland are signatories to the Hague Convention.

12 "[A letter of request] shall not be used to obtain evidence which is not intended for use in judicial

13 proceedings." *Id.* Whether to issue the letter is within the discretion of the court. *See*

14 *Aerospatiale*, 482 U.S. at 540-41. The court should first examine the facts of the case and the

15 foreign sovereign's interests to determine whether the letter of request will be effective. *Id.* at

16 543-44.

17

18

---

19 [1] The letter Hague Convention requires the letter to specify:

20      (a) the authority requesting its execution and the authority requested to execute it, if
        known to the requesting authority;

21      (b) the names and addresses of the parties to the proceedings and their representatives, if
        any;

22      (c) the nature of the proceedings for which the evidence is required, giving all necessary
        information in regard thereto;

23      (d) the evidence to be obtained or other judicial act to be performed.
        Where appropriate, the Letter shall specify, inter alia--

24      (e) the names and addresses of the persons to be examined;

25      (f) the questions to be put to the persons to be examined or a statement of the subject-
        matter about which they are to be examined;

26      (g) the documents or other property, real or personal, to be inspected;
        (h) any requirement that the evidence is to be given on oath or affirmation, and any

27      special form to be used;
        (i) any special method or procedure to be followed under Article 9.

28 Hague Convention, art. 3, 3 U.S.T. 2555.

1    Here, plaintiff filed this action against defendants for trademark infringement arising from

2  defendants' homeopathic eye drops.  Plaintiff maintains that the letter is necessary because Swiss

3  defendant Similasan AG has declined to voluntarily produce the requested evidence and contests

4  personal jurisdiction in this action.  Plaintiff's proposed letter lists its interrogatories and the

5  documents plaintiff wishes for Similasan AG to produce.  (ECF No. 72-1.)  The interrogatories

6  concern Similasan AG's trademark application, licensing and use of the eye drop product, the

7  development of the product, and internal policies regarding the product.  The discovery request

8  raises Switzerland's sovereign interests, as the discovery is intrusive.  However, discovery is

9  inherently intrusive and without the information plaintiff seeks, this court will be unable to

10  determine the merit of plaintiff's claims.

11    Further, Similasan AG contests the issuance of such a letter because of the procedural

12  posture of the case.  The court notes that at the time plaintiff filed the instant motion, the court had

13  not issued a ruling on defendants' motions to dismiss and motion to stay discovery.  However, the

14  court has since resolved the aforementioned motions.  As such, Similasan AG's arguments are

15  now moot. Accordingly, the court will grant plaintiff's motion.

16    IT IS THEREFORE ORDERED that plaintiff's motion for order issuing a letter (ECF No.

17  72) is GRANTED.  A signed copy of plaintiff's proposed request (ECF No. 72-1) is attached to

18  this order.

19    IT IS FURTHER ORDERED that plaintiff must file an updated translation of the letter

20  attached to this order within seven days from the date of this order.  Plaintiff must also submit

21  certification that the translated letter is a true and correct translation. Upon receipt of the translated

22  letter and the certification, the court will affix its signature to the translated letter.

23

24

25    DATED: March 27, 2019

26    _____

27    C.W. HOFFMAN, JR.
      UNITED STATES MAGISTRATE JUDGE

28

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

T.R.P. Company, Inc.,

        Plaintiff/Counter-Defendant,

vs.

Similasan AG and Similasan Corporation.

        Defendants/Counter-Claimants.

CASE NO: 2:17-cv-02197-JCM-CWH

## REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE PURSUANT TO THE HAGUE CONVENTION OF 18 MARCH 1970 ON THE TAKING OF EVIDENCE ABROAD IN CIVIL OR COMMERCIAL MATTERS TO OBTAIN RELEVANT PHYSICAL EVIDENCE AND <u>TESTIMONY FROM SIMILASAN AG</u>

The Honorable Carl W. Hoffman, United States Magistrate Judge, of the District Court for the District of Nevada, presents his compliments to the Central Authority of the Canton of Aargau, Switzerland, and request international judicial assistance pursuant to the Hague Convention of 18 March 1970 on the Taking of Evidence in Civil or Commercial Matters, 23 U.S.T. 2555, T.I.A.S. No. 7444 (the "Hague Evidence Convention"), to obtain evidence to be used in the above-captioned civil proceeding before this Court. This Court has determined that it would further the interests of justice if Similasan AG provided documents in its possession and answers to narrowly tailored questions relevant to the issues in this case.

This Request has been made upon the motion of Plaintiff and Counter-Defendant T.R.P. Company, Inc. ("TRP"), who has advised the Court that the evidence sought from Similasan AG as to the issues in this case is relevant and necessary for the due determination of the matters in dispute between the parties in this case involving violations of the Lanham Act, 15 U.S.C. § 1051, et seq. including trademark infringement, false designation of origin, false advertising, and unfair



1

competition, as well as common law claims under Nevada law of tortious interference with business relations, commercial disparagement, and unfair competition. Having considered the submissions of the parties, this Court has found that this Request is necessary in the interests of justice and for the purpose of a full and fair determination of the matters in issue among the parties to the pending proceeding.

**SECTION I**

1. **Sender**

Michael N. Feder
Dickinson Wright PLLC
8363 West Sunset Road, Suite 200
Las Vegas, Nevada 89113-2210
United States of America

Daniel S. Silverman
Venable LLP
2049 Century Park East, Suite 2300
Los Angeles, California 90067
United States of America

Meaghan H. Kent
Venable LLP
600 Massachusetts Ave., NW
Washington, D.C. 20001
United States of America

*As Authorized By*:
The Honorable Carl W. Hoffman
United States Magistrate Judge
District Court for the District of Nevada
333 Las Vegas Blvd South
Las Vegas, NV 89101

2. **The Receiving (Central Cantonal) Authority is:**

Gerichte Kanton Aargau
Generalsekretariat
Obere Vorstadt 40
5000 Aarau
Switzerland



### 3. Persons to Whom the Executed Request is to be Returned

Dr. Christian Oetiker, LL.M., Attorney at Law
Vischer AG
Aeschenvorstadt 4, CH-4010 Basel
Email: coetiker@vischer.com
Tel.: +41 58 211 33 00

On behalf of:

Daniel S. Silverman
2049 Century Park East, Suite 2300
Los Angeles, California 90067
United States of America
Email: dssilverman@venable.com
Tel.: +1 (310) 229-0373

### 4. Specification of Date by Which the Requesting Authority Requires Receipt of the Response to the Letter of Request

A response is requested as soon as possible, in order to ensure that the evidence may be obtained before the deadline for factual discovery to conclude, which has already been extended twice and is currently set for **March 15, 2019**.

## SECTION II

**In conformity with Article 3 of the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters, the undersigned applicant has the honor to submit the following request:**

### 5. (a) Requesting Judicial Authority (Article 3(a))

The Honorable Carl W. Hoffman
United States Magistrate Judge
District Court for the District of Nevada
333 Las Vegas Blvd South
Las Vegas, NV 89101
United States of America

### (b) To the Central Authority of the Canton of Aargau, Switzerland

Gerichte Kanton Aargau
Generalsekretariat
Obere Vorstadt 40
5000 Aarau

Switzerland

**(c) Name of the Case and any Identifying Number**

*T.R.P. Company, Inc. v. Similasan AG et al*, Case No. 2:17-cv-02197-JCM-CWH, United States District Court for the District of Nevada.

6. **Names and Addresses of the Parties and Their Representatives (Article 3(b))**

**(a) Plaintiff**

T.R.P. Company, Inc.
c/o Michael N. Feder
Dickinson Wright PLLC
8363 West Sunset Road, Suite 200
Las Vegas, Nevada 89113-2210
United States of America
Tel. (702) 550-4400
mfeder@dickinson-wright.com

Daniel S. Silverman
Venable LLP
2049 Century Park East, Suite 2300
Los Angeles, California 90067
United States of America
Tel. (310) 229-0373
dssilverman@venable.com

Meaghan H. Kent
Venable LLP
600 Massachusetts Ave., NW
Washington, D.C. 20001
United States of America
Tel. (202) 344-4000
mhkent@venable.com

**(b) Defendants**

Similasan AG and Similasan Corporation
c/o Michael D. Rounds
Ryan Cudnik
Brownstein Hyatt Farber Schreck, LLP
5371 Kietzke Lane
Reno, NV 89511
United States of America
Tel. (775) 324-4100
mrounds@bhfs.com
rcudnik@bhfs.com



Michelle Gillette
Crowell & Moring LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA 94111
United States of America
Tel. (415) 365-7445
mgillette@crowell.com

**7. Nature and Purpose of the Proceedings and a Summary of the Case (Article 3(c)):**

**(a) Nature of the Action**

The above-captioned case is a civil proceeding in the United States District Court for the District of Nevada. The litigation arises primarily out of a trademark dispute over TRP's registered United States trademark PINKEYE RELIEF (No. 3,447,225), along with additional federal trademark claims, false advertising claims, and Nevada common law questions regarding business interference.

**(b) Summary of Complaint**

TRP primarily alleges infringement of the PINKEYE RELIEF mark by the defendants. TRP owns the registered mark PINKEYE RELIEF (No. 3,447,225) and first used it in commerce at least as early as 2007. Similasan AG attempted to file a trademark application for "Pink Eye Relief" on January 6, 2011 but the Trademark Examiner for the United States Patent and Trademark Office ("USPTO") issued an office action on March 29, 2011 indicating that Similasan's application was not entitled to registration "because of a likelihood of confusion with the mark in U.S. Registration No. 3447225." Similasan AG subsequently abandoned its application. The defendants used the name "Irritated Eye Relief" for their homeopathic pink eye product until 2017, when they renamed their product "Pink Eye Relief" despite TRP's trademark. TRP also alleges that defendants interfered with its longstanding business relationship with CVS Health, which decided to stop distribution of their products after an 11 year relationship. TRP's complaint also includes claims regarding false statements made by Similasan about TRP's



5

products as well as false statements made by Similasan about Similasan's products. Similasan AG admits that it manufactures Similasan's Pink Eye Relief product.

**(c) Summary of Defense and Counterclaims**

Similasan AG contends that the United States Food and Drug Administration ("FDA") required it to change its name from Pink Eye Relief, which it used from 2003 to 2011, to Irritated Eye Relief, but that its name change did not indicate an intent to abandon its use of "Pink Eye Relief" permanently. Similasan argues for cancellation of TRP's trademark on the basis that TRP made a false statement to the USPTO that it did not know of Similasan's use of the name when it applied for the trademark registration of "PINKEYE RELIEF" in 2006. Similasan has also brought counterclaims for false advertising and trademark infringement counterclaims for "Pink Eye Relief" as well as two other products: "Allergy Eye Relief" and "Earache Relief."

**(d) Other Necessary Information**

Similasan AG has denied that it is subject to personal jurisdiction in this matter. It claims that it manufactures the products but has no control over matters affecting the trademark usage or packaging. TRP contends that this assertion is contradicted by Similasan AG's filing of a trademark application and persistent presence in the responsive documents provided by Similasan Corporation in the course of discovery between TRP and Similasan. TRP requires access to the responsive documents in the care of Similasan AG in order to further demonstrate jurisdiction over the entity. TRP also requires access to this evidence as part of its trademark infringement case and defenses to Similasan's counterclaims.

**8. (a) Evidence to be Obtained or Other Judicial Act to be Performed (Article 3(d)):**

TRP asks that its specific list of interrogatories in part 9 below be duly permitted by the Central Authority of the Canton of Aargau to be asked of Similasan AG. TRP contends that the brief list of seven narrowly-tailored questions for Similasan AG is necessary both to prove essential



elements of their claims and to establish certain defenses to the defendants' counterclaims. TRP also asks that its request for documents, enumerated in part 10 below, be duly enforced by the Central Authority of the Canton of Aargau against Similasan AG. TRP contends that the documents in the possession of Similasan AG are necessary to prove essential elements of their claims and to establish certain defenses to the defendants' counterclaims. Accordingly, the assistance of the Central Authority of the Canton of Aargau is hereby sought. It is respectfully requested that, in the interest of justice and for the purpose of discovering evidence for use in the judicial proceeding now being litigated before this Court and for the due determination of the matters in dispute between the parties hereto, the Central Authority of the Canton of Aargau direct, through competent authority, the entry of such orders as the law of Switzerland permits, compelling answers to the questions below and the production of documents responsive to TRP's requests.

**(b) Purpose of the Evidence or Judicial Act Sought:**

This evidence is intended for use in the above-captioned proceeding between TRP and the defendants. TRP wishes to use the information gathered from the documents in Similasan AG's possession to establish its claims and to defend against Similasan's counterclaims.

**9. Documents or Other Property to be Inspected (Article 3(g)) – Interrogatories**

The following interrogatories are requested to be answered pursuant to and modeled on Federal Rule of Civil Procedure 33 ("Rule 33"). Rule 33 restricts the number of interrogatories to 25 per party, requires answers and objections within 30 days unless the Court orders otherwise, and permits the production of business records in place of a written answer if the documents would sufficiently answer the question asked. Rule 33 also defines the appropriate scope of the questions as "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case" while balancing the importance of the issues at stake, the amount in



controversy, the parties' relative access to the information as well as their resources, and whether the burden of the proposed discovery outweighs its benefit. In order to fulfill the purpose of these questions for the United States proceedings, the executing Court is requested to execute this request in a manner similar to the one provided for in Rule 33.

Nothing in the interrogatories shall call for the disclosure of information that is protected from disclosure under United States or Swiss law, including but not limited to, the attorney-client privilege and work-product doctrine. The following are the requested definitions and instructions for the interrogatories TRP requests to present to Similasan AG. Each interrogatory is followed by a one-sentence explanation of its relevance to the proceedings in the United States.

**Definitions:**

A.  "Similasan AG" shall mean Defendant Similasan AG with its principal place of business located at Haus Similasan, Chriesiweg 6, 8916 Jonen AG, Schweiz, and its employees, agents, and representatives, and any and all other persons acting on its behalf.

B.  "Similasan Corporation" shall mean Defendant Similasan Corporation, with its principal place of business located at 1805 Shea Center Drive, Suite 270, Highlands Ranch, CO, 80219 and its employees, agents, and representatives, and any and all other persons acting on its behalf.

C.  "Plaintiff" or "TRP" shall mean T.R.P. Company, Inc.

D.  The term "this Action" refers to *T.R.P. Company, Inc. v. Similasan AG and Similasan Corporation*, Case No. 2:17-cv-02197-JCM-CWH, pending before the United States District Court for the District of Nevada.

E.  "Pink Eye Relief" shall mean Similasan's Pink Eye Relief product and all its past and present versions, including the Irritated Eye Relief product.



**Instructions:** In addition to the substantive answer, Similasan AG should provide the source of the information with as much particularity as is reasonably possible and identify other persons known or believed to have some or all of the information sought in the given question. These requests are of a continuing nature and therefore Similasan AG should provide supplemental responses if it obtains further or different information after the date of the initial answer.

**Interrogatories:**

1.     Describe when Similasan AG first began developing the "Pink Eye Relief" relief product, the date the name "Pink Eye Relief" was developed, the dates that "Pink Eye Relief" was used in commerce in the United States, and the persons or entities with whom it worked in the development of the "Pink Eye Relief" product and name.

**Relevance**: The answer to this question will assist the Court in the United States in establishing the timeline related to the first use and subsequent abandonment of the Pink Eye Relief trademark at issue in this Action and the entities involved in such development, use and abandonment.

2.     Describe Similasan AG's decision to apply for, and then abandon the application for, trademark registration of "Pink Eye Relief" with the United States Patent and Trademark Office ("USPTO") on January 6, 2011 (USPTO Application No. 85/212,101) and all persons or entities who were involved in the decision and process.

**Relevance**: The answer to this question will clarify the parties' arguments for the Court in the United States surrounding first use and abandonment of the Pink Eye Relief trademark at issue in this Action.

3.     Describe Similasan AG's decision to apply for, and then abandon the application for, trademark registration of "Earache Relief" with the USPTO on January 6, 2011 (USPTO



9

Application No. 85/212,105) and all persons or entities who were involved in the decision and process.

      **Relevance**: The answer to this question will clarify the parties' arguments for the Court in the United States surrounding first use and abandonment of the Earache Relief trademark at issue in this Action.

      4.     Describe Similasan AG's first knowledge of TRP's use of Pinkeye Relief® and TRP's U.S. Trademark Registration for PINKEYE RELIEF (Reg. No. 3,447,255).

      **Relevance:** The answer to this question will inform the question of intent and willfulness for purposes of assessment of the parties' trademark claims by the Court in the United States.

      5.     Identify every version of the Pink Eye Relief product manufactured by Similasan AG and distributed in the United States and when each of those versions was sold in the United States and indicate whether each version included Belladonna and/or Silver Sulfate.

      **Relevance:** The answer to this question will inform assessment by the Court in the United States of the parties' arguments regarding advertising the safety of their respective homeopathic pink eye products, including Similasan Corporation's counterclaims related to TRP's advertising.

      6.     Describe all manufacturing infractions or violations Similasan AG has incurred in connection with the manufacture of Pink Eye Relief or Earache Relief, including from any United States or international governmental agencies, including the United States Food and Drug Administration and Federal Trade Commission warning letters, and any actions Similasan AG took regarding those violations.

      **Relevance**: The answer to this question will inform the assessment by the Court in the United States of the parties' arguments regarding advertising the safety of the Similasan AG Pink Eye Relief and Earache Relief products, as well as trademark infringement claims regarding the product labeling and trademark abandonment by Similasan AG and Similasan Corporation.



7.      Describe the investigation and research Similasan AG has performed regarding the efficacy, safety or possible adverse effects of Pink Eye Relief, including its ingredients Belladonna and Silver Sulfate.

**Relevance:** The answer to this question will inform the assessment by the Court in the United States of the parties' arguments regarding advertising the safety and efficacy of their respective homeopathic pink eye products.

### 10.    Documents or Other Property to be Inspected (Article 3(g)) – Requests for Production

The following requests for production are requested to be answered pursuant to and modeled on Federal Rule of Civil Procedure 34 ("Rule 34"). Rule 34 permits a party to request that another party produce relevant documents, provided that those documents are described with particularity and specify when and how they should be produced. Parties typically have 30 days to respond as to whether they will produce such documents or object to their production. The scope limitations for the request are the same as for those governed by Rule 33, as explained in part 9. In order to fulfill the purpose of these questions for the United States proceedings, the executing Court is requested to execute this request in a manner similar to the one provided for in Rule 34.

Nothing in the requests shall call for the disclosure of information that is protected from disclosure under United States or Swiss law, including but not limited to, the attorney-client privilege and work-product doctrine. The following are the requested definitions and instructions for the document requests TRP seeks to present to Similasan AG. Each request is followed by a one-sentence explanation of its relevance to the proceedings in the United States.

**Definitions:**

1. "Similasan AG" is defined in Part 9 above.

2. "Similasan Corporation" is defined in Part 9 above.

3. "Plaintiff" or "TRP" is defined in Part 9 above.



4. "Pink Eye Relief" is defined in Part 9 above.

5. The term "communication" means the transmittal of information by any means, including, without limitation, written, verbal, and electronic transmission of information.

6. The term "document" or "documents" as used herein shall have the broadest possible meaning ascribed to it by the Federal Rules of Civil Procedure 34(a) and shall in its broadest sense include, without limitation any and all written, printed, typed, recorded or graphic matter of every type and description, in Similasan AG's actual or constructive possession, custody or control.

**Instructions:** Similasan AG should produce all responsive information and documents, including all electronically stored information and documents, in their original form. If only a portion of the document is responsive, the entire document should be produced subject only to the redaction of any privileged material. These requests are of a continuing nature and so Similasan AG should provide supplemental responses if it obtains further or different information after the date of the initial answer. Unless otherwise stated in the interrogatory request itself, produce documents and information from January 2002 onward.

**Requests:**

1. Documents relating to Similasan AG's 2011 decisions to apply for, and then to abandon, the application for a trademark registration for "Pink Eye Relief" in the United States, including documents exchanged between Similasan AG, Similasan Corporation, or with any other entities.

**Relevance**: The production of these documents will assist the parties and the Court in the United States in assessing personal jurisdiction and the viability of the parties' trademark infringement claims and abandonment defense.



2. Documents relating to the change in product name from Pink Eye Relief to Irritated Eye Relief in 2011 and then back to Pink Eye Relief in 2017, including documents sufficient to evidence the rationale and decision to change these names on products, including documents exchanged between Similasan AG, Similasan Corporation, or with any other entities who would have participated in those decisions, such as manufacturers or marketing consultants.

**Relevance**: The production of these documents will assist the parties and the Court in the United States in assessing personal jurisdiction and the viability of the parties' trademark infringement claims and abandonment arguments as well as willfulness and intent.

3. License agreements, use agreements, or other authorization agreements that relate to the distribution of the Pink Eye Relief product in the United States, including agreements with Similasan Corporation or other distributing entities.

**Relevance**: The production of these documents will assist the parties and the Court in the United States in assessing personal jurisdiction and the viability of the parties' trademark infringement claims and abandonment arguments.

4. Documents sufficient to show the development of each version of Similasan AG's Pink Eye Relief product and the justification for the inclusion of Belladonna and Silver Sulfate, including documents sufficient to evidence any research performed regarding the safety, efficacy or adverse effects of the Pink Eye Relief product.

**Relevance:** The production of these documents will assist the parties and the Court in the United States in assessing the viability of the false advertising claims at issue regarding the safety of Similasan AG's Pink Eye Relief product.

5. Documents sufficient to show Similasan AG's policies and procedures for monitoring the manufacture of products in its facilities, namely the Pink Eye Relief product.



**Relevance**: The production of these documents will assist the parties and the Court in the United States in assessing the viability of the false advertising claims at issue regarding the safety of Similasan AG's Pink Eye Relief product.

6. Documents sufficient to show any investigations or evaluations conducted by third parties or governmental entities of Similasan AG's manufacturing facilities.

**Relevance:** The production of these documents will assist the parties and the Court in the United States in assessing the viability of the false advertising claims at issue regarding the safety of Similasan AG's Pink Eye Relief product.

7. Documents relating to the efficacy, safety, or possible adverse effects of the Pink Eye Relief product or any of the ingredients in the Pink Eye Relief product, including Belladonna and Silver Sulfate, including any documents exchanged between Similasan AG and Similasan Corporation.

**Relevance:** The production of these documents will assist the parties and the Court in the United States in assessing the viability of the false advertising claims at issue regarding the safety of Similasan AG's Pink Eye Relief product.

8. Documents sufficient to show any consumer complaints relating to the Pink Eye Relief product.

**Relevance:** The production of these documents will assist the parties and the Court in the United States in assessing the viability of the false advertising claims at issue regarding the safety of Similasan AG's Pink Eye Relief product as well as the claims relating to trademark infringement and any harm caused by trademark infringement.

9. Documents concerning the efficacy, safety, or possible adverse effects of TRP's PinkEye Relief® product or any of the ingredients in TRP's PinkEye Relief® product, or other



14

competitors' homeopathic pink eye products, including any research performed and including documents exchanged between Similasan AG and Similasan Corporation.

**Relevance:** The production of these documents will assist the parties and the Court in the United States in assessing the viability of the false advertising claim at issue regarding the safety of TRP PinkEye Relief® product as well as the unfair competition, commercial disparagement, and interference with business relationship claims at issue in this case.

10. Documents relating to Similasan AG's efforts to convince United States retailers to remove TRP's PinkEye Relief and Earache Relief products from their stores and replace them with Similasan's competing products, including communications with Similasan Corporation regarding those efforts and communications with retailers in furtherance of those efforts.

**Relevance:** The production of these documents will assist the parties and the Court in the United States in assessing personal jurisdiction, as well as the viability of the unfair competition, commercial disparagement, and interference with business relationship claims at issue in this case.

11. Documents relating to Similasan AG's efforts to convince United States retailers that TRP could not use the words "pink eye" on its products, including communications with Similasan Corporation regarding those efforts and communications with retailers in furtherance of those efforts.

**Relevance:** The production of these documents will assist the parties and the Court in the United States in assessing personal jurisdiction and the viability of the unfair competition, commercial disparagement, and interference with business relationship claims at issue in this case.



12. Documents relating to Similasan AG's decision not to produce a new UPC/GTIN when it changed its pink eye product name in or around 2017 from Irritated Eye Relief to Pink Eye Relief, including communications with Similasan Corporation regarding those efforts and communications with retailers in furtherance of those efforts.

**Relevance:** The production of these documents will assist the parties and the Court in the United States in assessing personal jurisdiction and the viability of the false advertising claims at issue regarding the safety of Similasan AG's Pink Eye Relief product.

13. Documents relating to any manufacturing infractions or violations Similasan AG has received, including in connection the Pink Eye Relief product, as well as any warning letters from the U.S. Food and Drug Administration ("FDA") or similar letters from other governmental agencies, and actions taken by Similasan AG regarding the infractions or violations.

**Relevance:** The production of these documents will assist the parties and the Court in the United States in assessing personal jurisdiction and the viability of the trademark infringement and false advertising claims at issue in this case.

## 11. Special Methods or Procedures to be Followed (Article 3(i))

It is respectfully requested that the responses to the interrogatories and requests for production follow the prescribed methods in the instructions above, which are pursuant to United States procedural guidelines, most notably Federal Rules of Procedure 33 and 34, respectively. Furthermore, TRP requests that Similasan AG provide general information regarding responsive documents in their possession over which they claim privilege separately. All documents are requested to be provided in either their original physical or original electronic format.



**12. Specification of the Privilege or Duty to Refuse to Give Evidence Under the Law of the State of Origin (Article 11):**

Under the laws of the United States, any person has a privilege to refuse to give evidence if the evidence discloses a confidential communication between that person and that person's attorney that was made for the purpose of obtaining legal advice and which privilege has not been waived explicitly or implicitly. This attorney-client privilege belongs to the client and can be invoked by the client. A witness also may refuse to give evidence that discloses any information that constitutes the work product of attorneys created during or in anticipation of litigation. If any documents are withheld on such grounds, a statement to that effect should be contemporaneously produced indicating what documents are withheld or redacted and the nature of the privilege claimed.

**13. Reimbursement (Article 14)**

The fees and costs incurred pursuant to this Request that are reimbursable under the second paragraph of article 14 or under any other article of the Hague Evidence Convention that is applicable to Switzerland will be borne by Plaintiff TRP, in care of their attorneys, Dickinson Wright PLLC and Venable LLP. Their payment of any such fees and costs is without prejudice to their making a subsequent request to be reimbursed for these costs by other parties in the matter.

## **CLOSING**

The Court expresses its appreciation to the Central Authority of the Canton of Aargau for its courtesy and assistance in this matter. It is the understanding of this Court that the granting of

/ / /

/ / /

/ / /

/ / /

/ / /



17

assistance of the type herein requested is authorized by the law of Switzerland and, in particular, by the Hague Evidence Convention.

Dated: Las Vegas, Nevada

March 27, 2019

Signature and seal of the requesting authority:

[Seal of the Court]

_____
Honorable Carl W. Hoffman
United States Magistrate Judge
District Court for the District of Nevada