UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| T.R.P. COMPANY, INC., | Case No. 2:17-CV-2197 JCM (DJA) |
| Plaintiff(s), | ORDER |
| v. | |
| SIMILASAN AG and SIMILASAN CORPORATION, | |
| Defendant(s). | |

Presently before the court is defendant Similasan AG's ("AG") motion for summary judgment.  (ECF Nos. 112; 113).[1]  Plaintiff T.R.P. Company, Inc. ("TRP") filed a response (ECF Nos. 137; 139), to which AG replied (ECF Nos. 149; 152).  AG also objects to evidence TRP submitted in support of its opposition.  (ECF Nos. 150; 153).

Also before the court is TRP's motion for partial summary judgment.  (ECF Nos. 114; 116).  Defendant Similasan Corporation ("Corp.") filed a response (ECF Nos. 129; 131), to which TRP replied (ECF Nos. 143; 145).  AG also filed a response (ECF No. 122), to which TRP replied (ECF No. 146; 148).

Also before the court is Corp.'s motion for summary judgment (ECF Nos. 119; 121).  TRP filed a response (ECF Nos. 140; 141), to which Corp. replied (ECF Nos. 156; 159).  Corp. also objects to evidence TRP submitted in support of its opposition.  (ECF Nos. 157; 160).

. . .

. . .

_____

[1] The parties in this action consistently filed redacted versions of their motions, responses, and replies and then separately filed unredacted versions thereof under seal.

James C. Mahan
U.S. District Judge

## I.     Background

This action arises from AG and Corp.'s alleged infringement of TRP's marks: PINKEYE RELIEF, EARACHE RELIEF and ALLERGY EYES RELIEF.  (ECF No. 116 at 8).

AG manufactured and Corp. sold its earache product, EARACHE RELIEF, and its pink eye product, PINK EYE RELIEF, in or about 2002 and 2004, respectively.  (ECF Nos. 116 at 9; 121 at 12).  Corp. "has sold over 9 million units of PINK EYE RELIEF, with gross sales of over $54,340,000, and spent over $9 million in marketing" since 2004; over $44,410,000 of gross sales and 7,734,000 units were sold between 2004 and 2010.  (ECF No. 121 at 12).

Corp.'s Earache Relief and Pink Eye Relief were subject to FDA import detention in 2008 and 2011, respectively.  (ECF No. 116 at 9; 121 at 15–16).  Corp. then changed the names of its products to Irritated Eye Relief and Ear Relief.  (ECF No. 116 at 10–11; 121 at 16–17).  Corp. contends that the FDA forced it to change the names of those products.  (ECF No. 121 at 15–17). TRP argues that Corp. abandoned the names Pink Eye Relief and Earache Relief.  (ECF No. 116 at 9).

In 2006—while Corp. was still using the names Pink Eye Relief and Earache Relief—TRP filed an intent-to-use application for PINKEYE RELIEF on the principal register.  (ECF Nos. 116 at 7–8; 121 at 13).  With that application, Thomas Pominville, TRP's owner and founder, submitted a declaration that asserted "no other person, firm, corporation, or association has the right to use the [PINKEYE RELIFE] mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely . . . to cause confusion . . . ."  (ECF No. 121 at 13).  TRP's application was denied in June 2007, and, in January 2008, the examiner sent TRP a notice of abandonment.  *Id.* at 14.

TRP renewed its application in February 2008, which was granted in June.  (ECF Nos. 116 at 7; 121 at 14).  The parties agree that TRP first sold Pinkeye Relief in 2013, although TRP licensed the trademark to Lobob Laboratories in 2006 and began using the mark "in connection with its own branded homeopathic eye drop product—promoting, shipping samples, and offering its PinkEye Relief® product to retailers" in 2010.  (ECF Nos. 116 at 7; 121 at 14).

**James C. Mahan**
**U.S. District Judge**

- 2 -

1    Beginning in 2011, Corp. informed its retail clients that the FDA required it to change its
2    products' names.  (ECF No. 121 at 17).  TRP argues the FDA did not require Corp. to change the
3    names of its products, making Corp.'s representations to retailers false.  (ECF No. 141 at 31).  TRP
4    claims that Corp. was also telling retailers that TRP could not use the words "pink eye" in over-
5    the-counter product names and that TRP was "risky."  (ECF No. 141 at 31–35).

6    After resolving the FDA import detention in 2017, Corp. changed its products' names back
7    to Pink Eye Relief and Earache Relief.  (ECF No. 116 at 11–12).  CVS then terminated its business
8    relationship with TRP, initiated the competitive bidding process for exclusivity, and awarded the
9    exclusivity deal to Corp.  (ECF No. 121 at 18).

10    As a result, TRP initiated this action on August 16, 2017.  (ECF No. 1).  In its first amended
11    complaint, TRP alleges six causes of action: (1) federal trademark infringement in violation of the
12    Lanham Act § 32(a); (2) false designation of origin, trademark infringement, and unfair
13    competition in violation of the Lanham Act § 43(a); (3) unfair competition; (4) tortious
14    interference with prospective economic advantage; (5) business disparagement; and (6) false
15    advertising and false descriptions in violation of the Lanham Act § 43(a).  (ECF No. 42-1).  Corp.
16    filed a counterclaim, which it later amended, asserting nine causes of action: (1) declaratory
17    judgment of non-infringement (PinkEye Relief); (2) cancellation of trademark registration
18    (PinkEye Relief); (3) violation of the Lanham Act, 15 U.S.C. § 1125; (4) Nevada consumer fraud;
19    (5) trademark infringement (Pink Eye Relief); (6) trademark infringement (Allergy Eye Relief);
20    (7) cancellation of trademark registration (Allergy Eye Relief); (8) trademark infringement
21    (Earache Relief); and (9) cancellation of trademark registration (Earache Relief).  (ECF No. 43-
22    1).

23    On June 1, 2018, TRP filed, without obtaining the court's leave, a second amended
24    complaint that alleges the same six causes of action.  (ECF No. 50).  The court, in its discretion,
25    allowed TRP to proceed on the second amended complaint.  (ECF No. 76).  The court also
26    dismissed TRP's business disparagement claim with prejudice.  *Id.*

27    Each of the parties now moves for summary judgment in its favor.  (ECF Nos. 113; 116;
28    121).

**James C. Mahan**
**U.S. District Judge**

- 3 -

1    II.    **Legal Standard**

2          The Federal Rules of Civil Procedure allow summary judgment when the pleadings,

3    depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

4    show that "there is no genuine dispute as to any material fact and the movant is entitled to a

5    judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A principal purpose of summary judgment is

6    "to isolate and dispose of factually unsupported claims."  *Celotex Corp. v. Catrett*, 477 U.S. 317,

7    323–24 (1986).

8          For purposes of summary judgment, disputed factual issues should be construed in favor

9    of the non-moving party.  *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990).  However, to be

10   entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts

11   showing that there is a genuine issue for trial."  *Id.*

12         In determining summary judgment, a court applies a burden-shifting analysis.  The moving

13   party must first satisfy its initial burden.  "When the party moving for summary judgment would

14   bear the burden of proof at trial, it must come forward with evidence which would entitle it to a

15   directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has

16   the initial burden of establishing the absence of a genuine issue of fact on each issue material to

17   its case."  *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000)

18   (citations omitted).

19         By contrast, when the nonmoving party bears the burden of proving the claim or defense,

20   the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential

21   element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed

22   to make a showing sufficient to establish an element essential to that party's case on which that

23   party will bear the burden of proof at trial.  *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving

24   party fails to meet its initial burden, summary judgment must be denied and the court need not

25   consider the nonmoving party's evidence.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–

26   60 (1970).

27         If the moving party satisfies its initial burden, the burden then shifts to the opposing party

28   to establish that a genuine issue of material fact exists.  *See Matsushita Elec. Indus. Co. v. Zenith*

**James C. Mahan**
**U.S. District Judge**                                    - 4 -

*Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data.  *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial.  *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial.  *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 249 (1986).  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted.  *See id.* at 249–50.

**III.   Discussion**

*A.   AG's motion for summary judgment*

At its core, AG advances a single argument in favor of its motion for summary judgment: "TRP's claims against AG are based solely on alleged actions by Corp.  TRP has absolutely no evidence of any wrongful actions by AG." (ECF No. 113 at 7).  The court agrees, and AG's motion for summary judgment is granted.

In response, TRP relies heavily on this court's prior order, in which the court held that "AG engaged in significant activities with the intention to sell Pink Eye Relief in the United States" and "TRP's trademark and unfair competition claims would not arise but-for . . . AG's intentional acts in furtherance of selling Pink Eye Relief in the United States." (ECF No. 139 at 5–8, 17 (quoting ECF No. 76)).  However, as AG correctly notes, "[t]he selected quotes from the [c]ourt's personal

jurisdiction [o]rder that TRP cites in its summary judgment [o]pposition relate to an analysis of *due process*, not liability." (ECF No. 152 at 12 (emphasis in original)).

The court's prior holding stood for the proposition that AG being subject to suit in Nevada did not offend traditional notions of fair play and substantial justice, particularly because TRP pleaded a prima facie case that AG's forum-related activities caused its damages. (*See generally* ECF No. 76). Faced with a motion for summary judgment, the sufficiency of TRP's pleading is no longer at issue; instead, the sufficiency of its evidence is dispositive.

TRP concedes that AG and Corp. are separate corporate entities. Indeed, "TRP's operative pleading does not allege an alter ego theory, or any other theory of indirect liability, and TRP has specifically disclaimed pursuing an alter ego theory in this case." (ECF No. 113 at 7). Instead, TRP summarily claims that "both Similasan Corp. and Similasan AG engaged in direct conduct causing damage to TRP." (ECF No. 139 at 8). Without providing any legal theory of liability, TRP contends that AG is liable for Corp.'s conduct because the two are closely related. *See generally id.*

However, in both its amended complaint (ECF No. 50) and its opposition to AG's motion (ECF No. 139), TRP frequently refers to "Similasan" without any differentiation between the two admittedly-separate corporate defendants. TRP does not provide specific evidence of AG infringing on its mark. (*See generally* ECF No. 139). AG does not sell any products in the United States—Corp. does. (ECF No. 152 at 7). TRP does not specify which "Similasan" allegedly contacted retailers regarding the use of the words "pink eye" in over-the-counter medications. (*See generally* ECF No. 139). To the contrary, AG provides the deposition of TRP's witnesses, none of whom were aware of any statements that AG made to such retailers. (ECF No. 152 at 17–18).

Thus, TRP has not provided the court with evidence that establishes a genuine issue of material fact as to AG. Accordingly, the court grants AG's motion for summary judgment as to all claims.[2]

. . .

---

[2] Summary judgment in AG's favor is also appropriate for the reasons set forth in the court's discussion of Corp. and TRP's motions. *See* discussion, *infra* II.B.

James C. Mahan
U.S. District Judge

B.   *Corp. and TRP motions*

1.   *Cancellation of TRP's marks*

The Lanham Act provides protection to intellectual property rights—above and beyond those available at common law—for those who register their marks. *See, e.g.,* 15 U.S.C. § 1114(1). However, the Lanham Act also allows federal courts to cancel registrations.   *See* 15 U.S.C. §§ 1064, 1119; *Hokto Kinoko Co. v. Concord Farms, Inc.*, 738 F.3d 1085, 1097 (9th Cir. 2013) ("A party who believes he has been harmed by a trademark's registration may seek the cancellation of that trademark's registration on certain specified grounds . . . .").   Cancellation of a trademark registration is proper "when (1) there is a valid ground why the trademark should not continue to be registered and (2) the party petitioning for cancellation has standing."   *Star-Kist Foods, Inc. v. P.J. Rhodes & Co.*, 735 F.2d 346, 348 (9th Cir. 1984) (internal quotations omitted) (quoting *Int'l Order of Job's Daughters v. Lindeburg & Co.*, 727 F.2d 1087, 1091 (Fed. Cir. 1984)).

TRP does not argue that Corp. lacks standing to bring its cancellation claim.   Thus, the only point of contention is whether there is a valid ground why TRP's trademarks should not continue to be registered.   On this point, Corp. argues that TRP's non-use of the mark at the time of its application warrants cancellation.[3]   (ECF No. 121). The court agrees.

When applying for registration in the principal register, the applicant must either be using the mark in commerce or have "a bona fide intention, under circumstances showing the good faith of such person, to use a trademark in commerce . . . ." 15 U.S.C. §§ 1051(a)(3)(C), (b)(1).   When a mark is descriptive,[4] however, it may not be registered in the principal register until it "has become distinctive of the applicant's goods in commerce," that is to say, until it has acquired "secondary meaning." 15 U.S.C. § 1052(e)–(f).   In the meantime, such marks may be registered in the supplemental register, which does not allow for intent-to-use applications.   15 U.S.C. §§ 1091, 1095; *see also* 37 C.F.R. § 2.75.

---

[3]  Because TRP's nonuse is dispositive, the court need not reach whether such nonuse also amounted to fraud on the USPTO.

[4]  A mark is descriptive when it "define[s] a particular characteristic of the product in a way that does not require any imagination . . . ." *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1107 (9th Cir. 2016) (citing *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 632 (9th Cir. 2005)).

James C. Mahan
U.S. District Judge

Here, the parties do not dispute that the marks "PINKEYE RELIEF" and "EARACHE RELIEF" are descriptive. (*See generally* ECF Nos. 116; 121). Indeed, TRP's application to register PINKEYE RELIFE in the principal register was denied precisely because the USPTO deemed the mark descriptive. (ECF No. 121-2 at 78). Further, the USPTO found that "[a]lthough an amendment to the Supplemental Register would normally be an appropriate response to this refusal(s), such a response is not appropriate in the present case . . . until an acceptable amendment to allege use under 37 C.F.R. § 2.76 has been timely filed." *Id.*

Since the Lanham Act was amended in 1988, "token use" of a mark is not enough to register it. *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1156–57 (9th Cir. 2001) ("Congress amended the Lanham Act by redefining the term 'use in commerce' to mean 'the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a mark.'"). The new "stricter standard" contemplates "commercial use of the type common to the particular industry in question." *Id.* at 1157 (quoting *Paramount Pictures Corp. v. White,* 31 U.S.P.Q.2d 1768, 1774 (TTAB 1994)) (quotation marks omitted). Now, "[t]he term 'use in commerce' means the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark." 15 U.S.C. § 1127. As relevant here, a mark is deemed to be used in commerce when "it is placed in any manner on the goods or their containers or the displays associated therewith . . . and the goods are sold or transported in commerce." *Id.*

The parties agree that TRP first sold Pinkeye Relief in 2013. (ECF Nos. 116 at 7; 121 at 14). Nonetheless, TRP argues that it did use the marks in commerce because it licensed the trademark to Lobob Laboratories and began using the mark "in connection with its own branded homeopathic eye drop product—promoting, shipping samples, and offering its PinkEye Relief® product to retailers" in 2010. (ECF Nos. 116 at 7; 121 at 14).

TRP was not using the mark in commerce when it renewed its application for registration in 2008, and its argument to the contrary is unavailing. Although TRP licensed the trademark to Lobob Laboratories in 2006,[5] TRP granted Lobob a naked license, which actually undermines its

---

[5] Corp. notes that "TRP did not even provide the Court with the purported license. Likely, this is because the only copy TRP produced is unsigned, and, in fact, Lobob has no record of ever having licensed the mark from TRP." (ECF No. 159 at 12).

claim to the mark.  *See, e.g., Barcamerica Int'l USA Tr. v. Tyfield Importers, Inc.*, 289 F.3d 589, 596 (9th Cir. 2002) ("Uncontrolled or 'naked' licensing may result in the trademark ceasing to function as a symbol of quality and controlled source.") (quoting *McCarthy on Trademarks and Unfair Competition* § 18:48, at 18–79 (4th ed. 2001)).  Next, whether TRP began using its mark *in 2010* does not establish use in commerce at the time of its *2008* application.  Indeed, in 2007, prior to TRP's application in 2008, Brian Banks specifically told Pominville that "the phrase 'Pink Eye Relief' is trademarked".  (ECF No. 121-3 at 117).

This reasoning necessitates the same conclusion as applied to EARACHE RELIEF.  TRP "did not, in fact, sell any good bearing [the EARACHE RELIEF] mark until 2013."  (ECF No. 116 at 24).  TRP did not use EARACHE RELIEF at the time it applied for registration.

Accordingly, the court finds that TRP did not use the marks in commerce at the time it applied for registration.  TRP's registration of these marks was void *ab initio*, and there is no genuine issue of material fact regarding Corp.'s cancellation counterclaim.  Cancellation is appropriate, and Corp.'s motion is granted as to this claim.[6]

     2.  *TRP's claims*

          i.  *Claims 1, 2, and 3: Infringement and unfair competition under the Lanham Act and common law*

As an initial matter, TRP's first cause of action—federal trademark infringement claim under 15 U.S.C. § 1114—fails because its mark has been cancelled.  *See* 15 U.S.C. § 1114. However, "federal law does not create trademarks."  *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 142 (2015).  To the contrary, "[t]rademarks and their precursors have ancient origins, and trademarks were protected at common law and in equity at the time of the founding of our country."  *Matal v. Tam*, 137 S. Ct. 1744, 1751 (2017).  "Thus, if a mark is cancelled, a claim for infringement may still be pursued based on an unregistered mark."  *OTR Wheel Eng'g,*

---

[6] Corp.'s trademark infringement claims (claims 5, 6, and 8) appear to be alleged in the alternative to its declaratory judgment (claim 1) and cancellation (claims 2, 7, and 9) claims.  (*See* ECF No. 43-1).  Indeed, in its motion for summary judgment, it argues only that it has priority over the mark, rather than a protectable trademark interest.  (*See generally* ECF No. 121).  Thus, the court dismisses the infringement claims and grants Corp.'s motion on the cancellation and declaratory judgment claims, which it addressed in its motion.

1   *Inc. v. W. Worldwide Servs., Inc.*, 897 F.3d 1008, 1022 (9th Cir. 2018) (citing *Dep't of Parks &*

2   *Recreation for State of Cal. v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1131 (9th Cir. 2006) (citing

3   in turn *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001))).

4      Accordingly, the court now considers TRP's unfair competition claims.  Plaintiff alleging

5   either infringement or unfair competition claims must prove two elements: "(1) that it has a

6   protected interest (or trademark right)" and "(2) that [the defendant's] usages are likely to cause

7   consumer confusion and thus infringe upon that interest." *Levi Strauss & Co. v. Blue Bell, Inc.*,

8   778 F.2d 1352, 1354 (9th Cir. 1985); *see also A.L.M.N., Inc. v. Rosoff*, 757 P.2d 1319, 1321 (Nev.

9   1988) ("At the heart of [cases alleging] trademark infringement . . . are two questions: Has a

10  protectable right been created?  Has it been infringed?" (citation omitted)).

11         It is axiomatic in trademark law that the standard test of
12      ownership is priority of use. To acquire ownership of a
        trademark it is not enough to have invented the mark first or
13      even to have registered it first; the party claiming ownership
        must have been the first to actually use the mark in the sale of
14      goods or services.

15  *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir.), *as modified,* 97 F.3d 1460

16  (9th Cir. 1996) (citing J. Thomas McCarthy, 2 *McCarthy on Trademarks and Unfair Competition* §

17  16.03 (3d ed. 1996)).[7]

18     Here, Corp. began using Pink Eye Relief in 2004 and, as discussed above, TRP did not

19  begin producing its PinkEye Relief until 2013.  (ECF No. 121 at 12, 14).  In fact, TRP filed an

20  intent-to-use application for PINKEYE RELIEF on the principal register in 2006—*while Corp.*

21  *was still using the names Pink Eye Relief and Earache Relief*.  (ECF Nos. 116 at 7–8; 121 at 13).

22  And TRP must have known about Corp.'s Pink Eye Relief and Earache Relief products because

23  TRP was actively reverse-engineering them.  (ECF No. 121-9 at 121–22).

24     TRP concedes that Corp. used the marks Pink Eye Relief and Earache Relief prior to TRP.

25  Instead, TRP argues that Corp. did not acquire secondary meaning in the marks.  (ECF No. 141 at

26  ────────────────

27      [7] Although "[w]hen proving ownership of a trademark, federal registration of the mark is
    prima facie evidence that the registrant is the owner of the mark," TRP's mark has been cancelled.

28      *Sengoku Works Ltd.*, 96 F.3d at 1219.  Thus, TRP is not entitled to this presumption of
    ownership.

**James C. Mahan**
**U.S. District Judge**

1   18–20).  TRP further argues Corp. abandoned the marks, even if they had acquired secondary

2   meaning.  *Id.* at 20–27.

3        But TRP reverses the standard.  To prevail on its unfair competition claim, TRP must prove

4   that its marks had acquired secondary meaning prior to Corp.'s use of confusingly-similar marks.

5   TPR has not, and it cannot establish secondary meaning.  TRP argues that, between 2013–2018, it

6   "has spent over $3 million advertising its PinkEye Relief® product including, but not limited to,

7   online, in magazines, at trade shows, and through social media."[8]  (ECF No. 116 at 7–8).  But TRP

8   neglects the over $9 million that Corp. spent marketing its PINK EYE RELIEF product; this

9   marketing started in 2004—before TRP began using the mark—until the product's name was

10  changed, which occurred after TPR registered the mark.  (ECF No. 121 at 12).

11       Moreover, "[p]roof of exact copying, without any opposing proof, can be sufficient to

12  establish a secondary meaning."  *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001,

13  1016 (9th Cir. 1985) (citing *Audio Fidelity, Inc. v. High Fidelity Recordings, Inc.,* 283 F.2d 551,

14  557 (9th Cir. 1960)).  TRP undeniably used the marks only after Corp. had used—and marketed—

15  them, which indicates that Corp. had, in fact, developed secondary meaning.

16       Accordingly, the evidence before the court establishes Corp.'s priority in the marks at

17  issue.  The court now turns to whether Corp. abandoned its priority rights.  Abandonment occurs

18  when a mark holder discontinues use of the mark "with intent not to resume such use."  15 U.S.C.

19  § 1127.  "Nonuse for two consecutive years constitutes *prima facie* abandonment, but this is a

20  presumption that may be rebutted by showing valid reasons for nonuse **or** by proving lack of intent

21  to abandon."  *Star-Kist Foods, Inc. v. P.J. Rhodes & Co.*, 769 F.2d 1393, 1396 (9th Cir. 1985)

22  (citations omitted).

23       Here, the parties heavily dispute whether the FDA did, in fact, preclude Corp. from using

24  the names "Pink Eye Relief" and "Earache Relief."  (*See generally* ECF Nos. 116; 121; 131; 141;

25  145; 159).  The court need not reach this issue, because Corp. presents evidence that it did not

26  intend to abandon its rights in the Pink Eye Relief and Earache Relief marks.  In particular, "Corp.

27

28     [8] Corp. notes that "TRP admits it does not track its marketing expense by product" and that the $3 million dollar figure is at odds with the evidence in this case.  (ECF No. 131 at 16)

**James C. Mahan**
**U.S. District Judge**

1   protested the [FDA] holds and required name changes from the time of the hold through November

2   2016, including consistent and multi-level contacts with FDA's Center for Drug Evaluation and

3   Research ('CDER'), FDA's Health and Human Services, and FDA District Offices."  (ECF No.

4   121 at 16).  Indeed, Corp. notes that it "also had a Swiss government official meet with the FDA

5   and the U.S. State Department on Corp.'s behalf."[9]  *Id.*  Finally, deposition testimony of Corp.'s

6   witnesses clearly indicate that Corp. intended to resume use of the Pink Eye Relief and Earache

7   Relief names.  (ECF Nos. 121 at 17; 121-9 at 161–62; 121-9 at 187 (Steiert testifying at his

8   deposition that "[i]t was my understanding that Similasan had always intended to go back to the

9   Pink Eye Relief name.")).

10          Thus, the court grants Corp.'s motion as to TRP's infringement and unfair competition

11   claims.  Further, in light of this court's holding regarding the infringement claims, it necessarily

12   follows that the court grants summary judgment in Corp.'s favor on its first counterclaim for

13   declaratory relief of noninfringement.

14                      *ii.  Claim 4: Tortious interference with prospective economic advantage*

15          To prevail on its tortious interference with prospective economic advantage claim, TRP

16   must prove the following five elements:

17                  (1) a prospective contractual relationship between the plaintiff and
                    a third party; (2) knowledge by the defendant of the prospective
18                  relationship; (3) intent to harm the plaintiff by preventing the
                    relationship; (4) the absence of privilege or justification by the
19                  defendant; and (5) actual harm to the plaintiff as a result of the
                    defendant's conduct.
20

21   *In re Amerco Derivative Litig.*, 252 P.3d 681, 702 (Nev. 2011) (quoting *Wichinsky v. Mosa*, 847

22   P.2d 727, 729–30 (Nev. 1993)).

23          As an initial matter, TRP "voluntarily dismisses its tortious interference claim only as it

24   applies to allegations of false and disparaging statements made by Similasan to CVS."  (ECF Nos.

25   139 at 5 n.1; 141 at 8 n.1).  Corp. argues that the alleged statements to CVS are "the only basis for

26

27   _____

28          [9]  Notably, TRP also acknowledges that AG "has for years directly communicated with,
     and even met with, FDA representatives regarding Similasan's product labeling and name
     changes."  (ECF No. 139 at 19).

**James C. Mahan**
**U.S. District Judge**                                          - 12 -

1    TRP's tortious interference claim." (ECF No. 159 at 7–8 (citing ECF No. 50 at 14–15)). The

2    court agrees. (ECF No. 50 at 5–6, 14–15 (alleging statements only to CVS)).

3         To the extent that TRP's "partial" voluntary dismissal does not dispose of this claim

4    entirely, summary judgment is nonetheless appropriate on this claim. In response to Corp.'s

5    motion, TRP does not advance any argument in support of its tortious interference claim. (*See*

6    *generally* ECF No. 141). Regarding its false advertisement claim, TRP argues that Walmart,

7    Albertsons, Target, Walgreens, and Associated Foods SLC indicated that Corp. had informed them

8    that no over-the-counter medication could use the world "pink eye," although such allegations are

9    not in TRP's complaint. *See id.* at 32–35; (*see also* ECF No. 50). TRP does not argue that it had

10   prospective business relationships with Walmart, Albertsons, Target, Walgreens, or Associated

11   Foods SLC. (*See generally* ECF Nos. 50; 141).

12        Thus, TRP's tortious interference with prospective economic advantage fails. The court

13   grants Corp.'s motion as to this claim.

14              *iii.   Claim 6: False Advertising[10]*

15        Section 43(a) of the Lanham Act provides a private cause of action for false advertising.

16   15 U.S.C. § 1125(a). The elements of this claim are as follows:

17            (1) a false statement of fact by the defendant in a commercial
             advertisement about its own or another's product; (2) the statement
18            actually deceived or has the tendency to deceive a substantial
             segment of its audience; (3) the deception is material, in that it is
19            likely to influence the purchasing decision; (4) the defendant caused
             its false statement to enter interstate commerce; and (5) the plaintiff
20            has been or is likely to be injured as a result of the false statement,
             either by direct diversion of sales from itself to defendant or by a
21            lessening of the goodwill associated with its products.

22   *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997) (citations and
23
     footnote omitted). Importantly, to be actionable for false advertising, a defendant's statement must
24
     misrepresent "the nature, characteristics, qualities, or geographic origin of his or her or another
25
     person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B).
26

27            [10] TRP voluntarily dismisses this claim "*only* as it applies to allegations of Similasan's
     failure to change the Pink Eye Relief product's UPC code." (ECF Nos. 139 at 5 n.1; 141 at 8 n.2).
28   Thus, the court considers this claim only as it pertains to whether the FDA prohibited Corp. from
     using the name "Pink Eye Relief." (*See* ECF No. 50 at 17–19).

TRP's false advertisement claim is predicated on "Similasan repeatedly ma[king] false statements about TRP's purported inability to use the words 'pink eye' on its eye drops in 2014 and later."[11]  (ECF No. 141 at 30); (*see also* ECF No. 50 at 7–8, 17–18).  Statements regarding whether the FDA allows over-the-counter products to use the words "pink eye" do not pertain to the nature, characteristics, qualities, or geographic origin of TRP's pinkeye products.  Corp. did not inform retailers that TRP's product was defective, deficient, or dangerous.  And, to be clear, TRP does not allege that Corp. made any such statements.  (*See generally* ECF No. 50).

Consequently, Corp.'s alleged statements are not actionable under 15 U.S.C. § 1125(a), and summary judgment is appropriate as to this claim.

**IV.   Conclusion**

The court already dismissed TRP's business defamation claim with prejudice.  (ECF No. 76).  The court now grants AG's and Corp.'s motions and denies TRP's motion in their entirety.  By so doing, the court grants summary judgment in Corp.'s favor on all of TRP's claims and counterclaims 1, 2, 7, and 9.  The court dismisses counterclaims 5, 6, and 8 because they were pleaded in the alternative to counterclaims 1, 2, 7, and 9.

Thus, it appears that the only claims remaining before the court are Corp.'s third and fourth counterclaims for alleged Lanham Act violations and Nevada consumer fraud, respectively.[12]  (*See* ECF No. 43-1).

. . .

. . .

---

[11]   TRP also alleges that Corp. is liable for telling retailers that the FDA instructed it to change the name of Pink Eye Relief.  (ECF No. 50 at 17–18).  This argument fails because such statements do not pertain to the nature, characteristics, qualities, or geographic origin of Corp.'s products.  Further, TRP presents no evidence that these statements, rather than those claiming TRP could not use the words "pink eye," caused any harm.  *See, e.g., id.* at 18 ("[M]any retailers, having been incorrectly told by Similasan **that TRP could not use the words 'pink eye' on its product**, were reluctant to buy TRP's Pinkeye Relief® product and, in fact, TRP lost potential customers and orders as a result . . . ." (emphasis added)).

[12]   Although Corp. captions its motion as one for complete summary judgment and claims that "[i]t is time to end this meritless lawsuit," it does not mention its third or fourth counterclaims.  (*See* ECF Nos. 119; 121 at 12).  Nor does any other party mention these claims when this or any other motion.  (*See* ECF Nos. 112; 113; 114; 116; 122; 129; 131; 137; 139; 140; 141; 146; 148; 149; 150; 156; 159).  Indeed, TRP moves for summary judgment only on Corp.'s trademark counterclaims and its own trademark infringement claims.  (ECF No. 116 at 6).

James C. Mahan
U.S. District Judge

1       Accordingly,

2       IT IS HEREBY ORDERED, ADJUDGED, and DECREED that AG's motion for summary

3  judgment (ECF Nos. 112; 113) be, and the same hereby is, GRANTED.

4       IT IS FURTHER ORDERED that TRP's motion for partial summary judgment (ECF Nos.

5  114; 116) be, and the same hereby is, DENIED.

6       IT IS FURTHER ORDERED that Corp.'s motion for summary judgment (ECF Nos. 119;

7  121) be, and the same hereby is, GRANTED.

8       DATED April 22, 2020.

9

10                             UNITED STATES DISTRICT JUDGE

James C. Mahan
U.S. District Judge

- 15 -